**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DANIEL MEANEY AND GEORGE EURIPIDES, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| THERMOS, L.L.C., | |
| Defendant. | |

Plaintiffs Daniel Meaney and George Euripides ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this class action complaint against Defendant Thermos, L.L.C. ("Defendant" or "Thermos"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

**INTRODUCTION**

1.      This is a class action lawsuit against Defendant Thermos L.L.C. regarding the manufacture, distribution, and sale of its Thermos Stainless King Food Jars and Thermos Sportsman Food & Beverage Bottles (the "Affected Products"), including Model Nos. SK3000, SK3020, and SK3010.

2.      Thermos sold the Affected Products nationwide through major retailers, including Target and Walmart, and online through Amazon.com and Thermos.com, for approximately $30 per unit.[1]

---

[1] *Thermos Recalls 8.2 Million Stainless King Food Jars and Bottles Due to Serious Impact Injury and Laceration Hazards*, CONSUMER PRODUCT SAFETY COMMISSION,

1

3.      Thermos imported the Affected Products, which were manufactured in China and Malaysia, and distributed them throughout the United States. The Affected Products were designed and sold with a stopper that lacks an adequate or effective pressure relief mechanism in the center, but Defendant failed to adequately disclose this material defect to consumers. [2]

4.      As a result of this defect, storing perishable food or beverages in the Affected Products for an extended period of time can lead to pressure buildup inside the container, which may cause the stopper to eject forcefully when opened. This constitutes a design defect, which Defendant has acknowledged through a nationwide recall issued on or about April 30, 2026 (Recall No. 26-444). The defect poses a serious risk of impact injuries and lacerations, including severe eye injuries. [3]

5.      Defendant has received at least 27 reports of incidents involving the stopper forcefully ejecting and striking consumers, including injuries requiring medical attention and three instances of permanent vision loss. [4]

6.      Plaintiffs and other consumers had a reasonable expectation that the Affected Products would be safe for their intended use, namely, the storage and consumption of food and beverages, and would not pose a risk of sudden and forceful ejection of components capable of causing serious injury. [5]

7.      Thermos' marketing and product labeling emphasize durability, reliability, and suitability for storing hot or perishable contents, including representing the products as part of its

---

https://www.cpsc.gov/Recalls/2026/Thermos-Recalls-8-2-Million-Stainless-King-Food-Jars-and-Bottles-Due-to-Serious-Impact-Injury-and-Laceration-Hazards (last visited May 4, 2026).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

"Stainless King" line of food jars and insulated beverage containers. However, these representations are misleading by omission, as Defendant failed to disclose that the Affected Products lacked an adequate pressure relief mechanism and could become pressurized during normal and foreseeable use, creating a dangerous condition.[6] *See Figure 1 below*.



*Figure 1: Screenshot from Thermos' website showing the claims made on the page about the effectiveness of its food jars*

8. Defendant provided general use and care instructions for the Affected Products, including directions regarding cleaning and limiting storage duration, but failed to include any

---

[6] *Care and Use Guide Vacuum Insulated Stainless Food Jar*, AMAZON, https://m.media-amazon.com/images/I/C1I1MruKM%2BL.pdf (last visited May 4, 2026).

warnings regarding the risk that internal pressure could build during normal use and cause the stopper to forcefully eject upon opening.[7]

9.      Upon information and belief, the product packaging, labeling, instructions, and advertising for the Affected Products failed to adequately warn consumers that the containers' stopper lacks an adequate or effective pressure-relief feature, which can cause pressure to build inside and result in the stopper forcefully ejecting upon opening, posing serious risks of impact injuries, lacerations, and other harm to users.

10.     Those representations regarding the safety of the Affected Products were false and misleading, and, as evidenced by Thermos' own recall and admissions, the Affected Products are not safe for their intended use.

11.     Those representations about safety omitted critical safety details.

12.     In Thermos' own marketing and promotional materials, the Affected Products are presented as safe, convenient, and suitable for everyday use with hot contents, encouraging consumers to open and use the containers in close proximity to their faces and hands. These representations reinforce a message of safety and ease of use while omitting any disclosure that the products' stopper lacks an adequate or effective pressure-relief feature, which can cause internal pressure to build and result in the stopper forcefully ejecting upon opening, a material hazard now acknowledged by the recall.[8]

---

[7] *16oz Stainless King Food Jar*, THERMOS, https://thermos.com/products/stainless-king-food-jar-16oz?_pos=1&_sid=aed1affa0&_ss=r&variant=40160981745820; and *24oz Stainless King Food Jar*, THERMOS, https://thermos.com/products/stainless-king-food-jar-24oz?variant=40160989053084 (last visited May 4, 2026)

[8] *See*, *Thermos Recalls 8.2 Million Stainless King Food Jars and Bottles Due to Serious Impact Injury and Laceration Hazards,* CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/Thermos-Recalls-8-2-Million-Stainless-King-Food-Jars-and-Bottles-Due-to-Serious-Impact-Injury-and-Laceration-Hazard (last visited May 4, 2026).

13.     Thermos had notice of defects in the Affected Products from publicly available consumer complaints well before the recall. For example, a consumer incident report submitted to SaferProducts.gov on or about April 12, 2024, described a Thermos Stainless King 16 oz vacuum-insulated food jar "explosively decompressing" upon opening, producing a loud bang and causing the lid to become a high-velocity projectile. The consumer reported that the sudden release of built-up internal pressure forcefully ejected both the contents and the lid, which traveled across the kitchen, struck a countertop edge, ricocheted back toward the user, continued an additional distance of approximately 8–10 feet, and struck surrounding surfaces before coming to rest, all within approximately one second and without any meaningful opportunity to react or avoid harm. Although no physical injury occurred in that instance, the report underscores the severity and unpredictability of the defect, including the risk of serious impact injuries, lacerations, and potential eye damage, particularly in a household setting with a minor present, and demonstrates that Thermos was on notice of the dangerous pressure buildup and forceful lid ejection well before the recall, yet failed to adequately warn consumers or implement a safer alternative design.[9]

---

[9]     *See Incident Report Detail*, SAFERPRODUCTS.GOV, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4692794 (last visited May 4, 2026) (51 YO consumer's vacuum container decompressed through top opening with a loud bang and lid flew out. Food inside flew and lid ricocheted against a countertop. Consumer and 15 YO child were not injured).



*Figure 2 - A consumer review on Saferproducts.gov*

14.     Accordingly, Plaintiffs bring this action individually and on behalf of the proposed Nationwide Class, New York Subclass, and New Jersey Subclass, as applicable, to recover damages, restitution, equitable relief, and all other available remedies for: (i) violation of New York General Business Law § 349, on behalf of Plaintiff Daniel Meaney and the New York Subclass; (ii) violation of New York General Business Law § 350, on behalf of Plaintiff Daniel Meaney and the New York Subclass; (iii) unjust enrichment, on behalf of Plaintiffs and the Nationwide Class; (iv) negligent design, on behalf of Plaintiffs and the Nationwide Class; (v) negligent failure to warn, on behalf of Plaintiffs and the Nationwide Class; (vi) negligence, on behalf of Plaintiffs and the Nationwide Class; (vii) breach of the implied warranty of merchantability, on behalf of Plaintiffs and the Nationwide Class; and (viii) violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq., on behalf of Plaintiff George Euripides and the New Jersey Subclass.

6

**PARTIES**

15.     Plaintiff George Euripides is a citizen of Haledon, New Jersey, and purchased a Thermos Stainless King Vacuum-Insulated Food Jar with Spoon, 16 Ounce, Matte Black through Amazon on October 9, 2021, paying approximately $21.79 per unit. Plaintiff Euripides purchased three such products for personal use. While using the product as intended, Plaintiff Euripides experienced a dangerous incident in which the container suddenly and forcefully ejected its stopper near his face due to internal pressure buildup. Plaintiff Euripides received a recall notice regarding the Affected Product. Plaintiff Euripides experienced emotional distress upon learning of the defect and the risk posed by the product. Prior to purchase, Plaintiff Euripides reviewed product descriptions on Amazon and/or Thermos's website. Plaintiff Euripides does not use the product anymore and remains concerned about the safety of the product and the risk of harm to himself and others.

16.     Plaintiff Daniel Meaney is a citizen of Long Beach, New York, and purchased a Thermos Stainless King Vacuum-Insulated Food Jar, 24 Ounce, Army Green through Amazon in or about 2024 for approximately $27.99. Plaintiff Meaney received a recall notice. Plaintiff Meaney was exposed to the same defect affecting the Affected Products, including the risk of sudden and forceful stopper ejection due to internal pressure buildup. Prior to purchase, Plaintiff Meaney was exposed to Defendant's marketing and product descriptions. Plaintiff Meaney experienced concern and distress upon learning of the recall and the associated safety risks, and would not have purchased the product or would have paid less for it had he known of the defect.

17.     Defendant Thermos is a Delaware corporation with its principal place of business located in Schaumburg, Illinois. Thermos designs, manufactures, markets, distributes, advertises, warrants, and sells consumer beverage and food containers, including the Affected Products,

throughout the United States. At all relevant times hereto, Thermos created and/or authorized the false and misleading advertising, labeling, and representations regarding the safety and performance of the Affected Products.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

19. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in Schaumburg, Illinois, within this District, rendering it "at home" here. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and Defendant is subject to personal jurisdiction in this District for the reasons set forth above.

## FACTUAL ALLEGATIONS

I.  **Defendant Manufactured, Distributed, Marketed, and Sold the Affected Products**

20. Defendant manufactured, distributed, marketed, and sold the Affected Products. The Affected Products were specifically marketed as safe, convenient, and suitable for storing and consuming hot foods and beverages.

21. Defendant engaged in marketing efforts to promote the Affected Products as safe, convenient, and suitable for storing hot and perishable foods for extended periods. Defendant and its retail partners, including Walmart, emphasized features such as "Thermos vacuum insulation technology for maximum temperature retention," representing that the products can "keep food cold for 14 hours and hot for 9 hours." By promoting the Affected Products' ability to retain heat

over extended periods and their suitability for everyday food storage, Defendant encouraged precisely the type of use, storing hot contents in a sealed container for prolonged durations that creates internal pressure, while failing to disclose the associated risk that the stopper could forcefully eject and cause serious injury.[10]

22.     The Affected Products were also marketed on Amazon, where product listings emphasize performance, safety, and convenience features. For example, Amazon listings for the Affected Products highlight "Thermos vacuum insulation technology for maximum temperature retention," "high quality 18/8 stainless steel," and a "Dura-Guard pressure relief stopper that enhances insulated performance and removes easily." These representations reinforce that the products are designed for storing hot contents in sealed conditions and promote the stopper as both functional and safe. However, these marketing statements are misleading by omission because they fail to disclose that the stopper lacks an adequate pressure relief mechanism and can forcefully eject when internal pressure builds, posing a serious risk of injury to consumers.[11]

23.     Defendant sold the Affected Products nationwide through its own website, Thermos.com, and through third-party retailers, including Target and Walmart, from at least March 2008 through July 2024, for approximately $30 per unit. On April 30, 2026, Defendant announced a nationwide recall of approximately 8.2 million units of the Affected Products after receiving at least 27 reports of incidents involving forceful stopper ejection, including injuries

---

[10] *Thermos 16 oz Stainless King Vacuum Insulated Food Jar (Model SK3000)*, WALMART, https://www.walmart.com/ip/Thermos-Stainless-King-Food-Jar-with-Folding-Spoon-Army-Green-16oz/713226486 (last visited May 4, 2026).
[11]     *THERMOS ICON Stainless Steel Food Jar with Spoon, 16 Ounce, Granite,* AMAZON, https://www.amazon.com/THERMOS (last visited May 4, 2026).

requiring medical attention and three reports of permanent vision loss.[12]



*Figure 3 - Screenshot from CPSC's website showing Thermos Stainless King 3000 and 3020 Food Jars and Thermos Sportsman 3010 Food & Beverage Bottles*

**II.**     <u>**Defendant's Design Poses a Serious Injury Hazard In The Affected Products**</u>

24.     Defendant's Affected Products pose a serious injury hazard, as the containers can build internal pressure and cause the stopper to suddenly and forcefully eject upon opening, striking users and causing dangerous stopper ejection events and associated risks to consumers.

25.     At least 27 incidents, including multiple reports of impact and laceration injuries, some requiring medical attention and three cases of permanent vision loss, have been reported to date. Consumers purchased or received these Affected Products under the belief that they were safe for household use; instead, they have been subjected to serious risks of injury.

26.     Plaintiffs were exposed to the same defect and risk of injury.

27.     The Affected Products were manufactured and distributed with stoppers that lack an adequate pressure-relief mechanism, permitting internal pressure to build and causing the

---

[12] *See*, *Thermos Recalls 8.2 Million Stainless King Food Jars and Bottles Due to Serious Impact Injury and Laceration Hazards*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/Thermos-Recalls-8-2-Million-Stainless-King-Food-Jars-and-Bottles-Due-to-Serious-Impact-Injury-and-Laceration-Hazard (last visited May 4, 2026).

stopper to eject unexpectedly during opening. Despite the existence of this hazard, the product manuals, box labeling, packaging, and online materials did not include any warnings that the stopper could suddenly eject or cause injury.

28. Feasible, safer alternative designs were available at reasonable cost, at all relevant times, including, but not limited to, (a) incorporation of an adequate or effective pressure-relief mechanism to safely release built-up internal pressure prior to opening; (b) redesigned stoppers that prevent sudden or forceful ejection; (c) vented lid systems or staged-opening features to allow gradual pressure release; (d) impact-resistant components to reduce the risk of injury upon opening; and (e) clear and conspicuous warning labels on the Affected Products.

III. **Defendant's False and Misleading Advertising Campaign to Promote Safety and Induce Consumers to Purchase the Affected Products**

29. Thermos' own product pages make affirmative safety, performance, and convenience claims that are misleading by omission. For example, Thermos advertises that its Stainless King™ Food Jars "keep hot food hot for up to 14 hours and cold food cold for up to 24 hours," emphasizing their suitability for storing food for extended periods and stating, "Your favorite meal goes where you go." The product descriptions further highlight features such as "double-wall vacuum insulation," a "wide-mouth opening" for ease of use, and a "pressure relief stopper." These representations promote the Affected Products as safe and reliable for the prolonged storage of hot and perishable contents. However, nowhere do the product pages or accompanying materials disclose the material risk that pressure can build within the container during normal and foreseeable use, causing the stopper to forcefully eject upon opening and creating a serious risk of impact injuries and lacerations, including permanent eye injuries.[13]

---

[13] *16oz Stainless King Food Jar*, THERMOS, https://thermos.com/products/stainless-king-food-jar-16oz?_pos=1&_sid=aed1affa0&_ss=r&variant=40160981745820; and *24oz Stainless King*

30. When it sold the Affected Products, Thermos' consumer-facing marketing was materially misleading and induced consumers to purchase and use the products under a false sense of safety. By promoting the stopper as a functional and beneficial feature while omitting the material risk that it could eject under pressure, Defendant engaged in deceptive and misleading advertising practices.

31. Nowhere does Thermos, on its product pages, packaging, or in its use and care instructions, disclose the material risk that internal pressure may build during normal and foreseeable use and cause the stopper to forcefully eject upon opening, creating a significant risk of impact injuries and lacerations, including severe eye injuries.[14]

32. Food storage containers such as the Affected Products are expected to be safe for their intended use, including the storage of hot and perishable contents for extended periods. Consumers reasonably expect that such products will be designed to safely manage internal pressure conditions generated during ordinary use and will not present a risk of sudden component ejection capable of causing injury.

33. Defendant positioned itself in the marketplace as a trusted and safety-conscious manufacturer of insulated food and beverage containers, promoting its Stainless King™ line as durable, reliable, and suitable for everyday use. By emphasizing heat retention, portability, and convenience as key features, Defendant cultivated consumer trust and distinguished its products from lower-cost alternatives. These marketing efforts enabled Defendant to sell the Affected

---

*Food Jar*, THERMOS, https://thermos.com/products/stainless-king-food-jar-24oz?variant=40160989053084 (last visited May 4, 2026).

[14] *16oz Stainless King Food Jar,* THERMOS, https://thermos.com/products/stainless-king-food-jar-16oz?_pos=1&_sid=aed1affa0&_ss=r&variant=40160981745820; and *24oz Stainless King Food Jar,* THERMOS, https://thermos.com/products/stainless-king-food-jar-24oz?variant=40160989053084 (last visited May 4, 2026).

Products through major retail platforms, including Amazon, Walmart, Target, and its own website.

34. Consumers reasonably relied on Defendant's representations that the Affected Products were safe for their intended use and incorporated appropriate design features to manage internal pressure and prevent injury. Defendant's marketing reinforced the perception that the products were carefully engineered, tested, and safe for household use, including for storing hot food and beverages in sealed containers.

35. As a result, consumers, including Plaintiffs, were induced to purchase and pay for the Affected Products based on Defendant's representations of safety, quality, and performance. In reality, the Affected Products were defectively designed and posed a serious risk of injury due to the lack of an adequate pressure relief mechanism in the stopper, as confirmed by the nationwide recall issued on April 30, 2026, following reports of at least 27 incidents, including injuries requiring medical attention and multiple instances of permanent vision loss.[15]

## IV. Consumers Have Been Harmed by Defendant's False and Misleading Representations

36. Defendant knew, or should have known, that the advertising and labeling claims made on the Affected Products are false and misleading.

37. Defendant had actual and/or constructive knowledge of the defect in the Affected Products prior to the April 30, 2026, recall, including through consumer complaints, product returns, and incident reports involving stopper failures and sealing component issues.

38. Thermos has acknowledged at least 27 reported incidents in which consumers were struck by a stopper that forcefully ejected upon opening the container, including reports of impact

---

[15] *Thermos Recalls 8.2 Million Stainless King Food Jars and Bottles Due to Serious Impact Injury and Laceration Hazards,* CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/Thermos-Recalls-8-2-Million-Stainless-King-Food-Jars-and-Bottles-Due-to-Serious-Impact-Injury-and-Laceration-Hazards (last visited May 4, 2026).

and laceration injuries requiring medical attention and three instances of permanent vision loss.[16]

39.     Defendant knew, or should have known, that the Affected Products were not safe for their intended use given the absence of an adequate pressure relief mechanism in the stopper, a design defect that rendered the products unreasonably dangerous during ordinary and foreseeable use.

40.     Defendant's marketing materials touted features such as the ability to keep food hot for extended periods, and the inclusion of a "pressure relief stopper" that enhances insulated performance and removes easily. These representations were misleading because they omitted the material fact that the stopper lacked an adequate pressure relief mechanism and could suddenly and forcefully eject under pressure, creating a foreseeable risk of serious injury to consumers.[17]

41.     Defendant knew, or should have known, that the advertising for the Affected Products misrepresented material facts concerning safety, including the risk of pressure buildup and forceful stopper ejection.

42.     Defendant knew, or should have known, that the representations and statements made through its labeling and advertising would mislead consumers to purchase the Affected Products instead of competitors' cheaper products based on a false belief that the Affected Products were safer and suitable for use with hot contents.

43.     Had Defendant disclosed the true risks of the Affected Products, Plaintiffs would not have purchased the Affected Products, or would have paid less for them, had the Affected Products been truthfully and accurately labeled.

---

[16] *Id.*

[17] *16oz Stainless King Food Jar,* THERMOS, https://thermos.com/products/stainless-king-food-jar-16oz?_pos=1&_sid=aed1affa0&_ss=r&variant=40160981745820; and *24oz Stainless King Food Jar,* THERMOS, https://thermos.com/products/stainless-king-food-jar-24oz?variant=40160989053084 (last visited May 4, 2026).

## V.    The Affected Products Have Been the Subject of a Recall

44.    On April 30, 2026, Thermos announced a recall of approximately 8.2 million Affected Products, including Stainless King food jars and Sportsman bottles. The recall followed at least 27 reported incidents involving consumers being struck by stoppers that forcefully ejected upon opening, resulting in impact and laceration injuries, including multiple reports requiring medical attention and three cases of permanent vision loss. The U.S. Consumer Product Safety Commission concluded that the Affected Products pose a significant risk of serious impact injury and laceration hazards.

45.    Defendant Thermos has advised consumers to immediately stop using the recalled Affected Products and to contact Thermos to receive a free replacement lid designed to mitigate the pressure-related hazard.[18]

46.    The recall directed consumers to contact Thermos to obtain a free replacement lid. There is no evidence that this will remedy the defect or make consumers whole.

47.    The recall does not fully remedy the defect or provide complete relief, as it does not compensate consumers for the full purchase price or eliminate future risk, give consumers statutory damages, and consumers remain unable to rely on Defendant's safety representations. Additionally, the recall does not offer consumers the option to obtain a cash refund, instead limiting relief to a replacement lid from a company they may no longer trust. Further, the replacement remedy may not fully eliminate the risk associated with pressure buildup and the forceful ejection of the stopper.

### TOLLING

48.    The statutes of limitations applicable to Plaintiffs' and the Classes' claims were

---

[18] *Id.*

tolled by Thermos's conduct and Plaintiffs' and Class Members' delayed discovery of their claims.

49.    As alleged above, Plaintiffs and members of the Classes did not know, and could not have known, that the Affected Products were dangerous. Plaintiffs and members of the Classes could not have discovered Thermos' unlawful conduct with reasonable diligence.

**CLASS ACTION ALLEGATIONS**

50.    Plaintiffs bring this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Affected Products in the United States for personal/household use within any applicable limitations period (the "Nationwide Class").

51.    Plaintiff Daniel Meaney brings this action individually and on behalf of the following New York subclass:

> All persons who purchased one or more of Defendant's Affected Products in the state of New York for personal/household use within any applicable limitations period (the "New York Subclass").

52.    Plaintiff George Euripides brings this action individually and on behalf of the following New Jersey subclass:

> All persons who purchased one or more of Defendant's Affected Products in the state of New Jersey for personal/household use within any applicable limitations period (the "New Jersey Subclass").

53.    Excluded from the Class and Subclasses are: (1) any Judge or Magistrate presiding over this action and any members of their families; and (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, any entities in which Defendant or its parents and any entities in which Defendant have a controlling interest, and its current or former employees, officers, and directors.

54.    Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown

16

and currently unavailable to Plaintiffs, but joinder of individual members herein is impractical. The Class is likely comprised of thousands, if not millions, of consumers. The precise number of Class Members and their addresses are unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

55. Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

   a. Whether the stopper design of the Affected Products, including the absence of an adequate pressure relief mechanism, posed an unreasonable risk of sudden and forceful ejection under normal and foreseeable use;

   b. Whether Defendant's marketing omitted material defects/hazards;

   c. Whether the recall demonstrates a feasible alternative design;

   d. Whether the marketing, advertising, packaging, and labeling for the Affected Products were false, misleading, and/or deceptive;

   e. Whether Defendant violated the state consumer protection statutes alleged herein;

   f. Whether Defendant was unjustly enriched; and

   g. The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

56. Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of

17

the Class because Plaintiffs, like all other Class Members, purchased one of the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

57.     Adequacy of Representation (Rule 23(a)(4)): Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and he has retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class.

58.     Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments, delay, and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

59.     Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or

18

refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
**Violation of New York Deceptive Acts and Practices Law**
**New York General Business Law § 349**
**(On behalf of Plaintiff Daniel Meaney (for the purposes of this count "Plaintiff"),**
**individually, and the New York Subclass)**

60.     Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

61.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . .."

62.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining Defendant from inaccurately describing, labeling, marketing, and promoting the Products.

63.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

64.     Defendant's improper consumer-oriented conduct, including failing to disclose that the Affected Products can build internal pressure and cause the stopper to suddenly and forcefully eject during normal use, is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass to purchase Defendant's Affected Products and to use them when they otherwise would not have. Defendant made these untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

65.     Plaintiff and the New York Subclass have been injured inasmuch as they purchased Affected Products that were mislabeled and entirely worthless. Accordingly, Plaintiff and the New York Subclass received less than what they bargained and paid for.

66.     Defendant's advertising and Affected Products' packaging and labeling induced Plaintiff and the New York Subclass to buy Defendant's Affected Products.

67.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a), and Plaintiff and the New York Subclass have been damaged thereby.

68.      As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass are entitled to monetary, statutory, compensatory, treble, and punitive damages, interest, and attorneys' fees and costs.

<u>**COUNT II**</u>
**Violation of New York False Advertising Law**
**New York General Business Law § 350**
**(On behalf of Plaintiff Daniel Meaney (for the purposes of this count "Plaintiff"), and the New York Subclass)**

69.     Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

70.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

   a.     False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

71.     N.Y. Gen. Bus. Law § 350a (1) provides, in part, as follows:

   a.     The term "false advertising," including labeling, of a commodity, or of the kind, character, terms, or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any

20

advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual.

72. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Affected Products inasmuch as they misrepresent that the Affected Products are safe for use and fail to disclose that the products can build internal pressure and cause the stopper to suddenly and forcefully eject during normal use.

73. Plaintiff and the New York Subclass have been injured inasmuch as they saw the labeling, packaging, and advertising and purchased Affected Products that were mislabeled and entirely worthless. Accordingly, Plaintiff and the New York Subclass received less than what they bargained and paid for.

74. Defendant's advertising, packaging, and Affected Products' labeling induced Plaintiff and the New York Subclass to buy Defendant's Affected Products.

75. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

76. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

77. Defendant made the material misrepresentations described in this Complaint in its advertising and on the Affected Products' packaging and labeling.

78. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers who purchased the Affected Products were and continue to be exposed to the Defendant's material misrepresentations. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass are entitled to monetary, statutory, compensatory, treble, and punitive damages, interest, and attorneys' fees and costs.

79. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers who purchased the Affected Products were and continue to be exposed to the Defendant's material misrepresentations. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass are entitled to monetary, statutory, compensatory, treble, and punitive damages, interest, and attorneys' fees and costs.

### COUNT III
### UNJUST ENRICHMENT
**(On behalf of the Plaintiffs and the Class)**

80. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

81. Plaintiffs and Class Members conferred benefits upon Defendant. Plaintiffs and Class Members paid money for Defendant's Affected Products that they would not have purchased or would not have purchased on the same terms, had they known that the Affected Products were unsafe or were defectively designed and unsafe due to pressure-related stopper ejection.

82. Defendant unjustly retained the benefits conferred upon by Plaintiffs and Class Members.

83. Defendant retained those benefits under circumstances that make it inequitable for

Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Products were unsafe and could not perform as advertised. If Plaintiffs and Class Members had known the true nature of Defendant's Affected Products, they would not have purchased the products. Plaintiffs and Class Members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

84.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT IV
## NEGLIGENT DESIGN
### (On behalf of the Plaintiffs and the Class)

85.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

86.     Defendant had a duty to exercise reasonable care in the design of the Affected Products to avoid unreasonable, foreseeable risks of harm where safer, feasible alternatives existed.

87.     The Affected Products are designed to store hot and perishable contents in a sealed container, which foreseeably leads to internal pressure buildup over time. In ordinary use, consumers open the container by removing the stopper, placing their face and hands in close proximity to the opening, thereby positioning themselves directly within the zone of danger because the design does not safely regulate or release internal pressure prior to opening.

88.     Feasible, safer alternative designs were available at reasonable cost, including, but not limited to, (a) incorporation of an effective pressure relief mechanism within the stopper; (b) a venting system to safely release internal pressure prior to opening; (c) stopper designs that

prevent forceful ejection under pressurized conditions; (d) improved sealing components that maintain integrity without creating dangerous pressure buildup; and (e) clear and adequate warning labels regarding the risk of pressure accumulation and sudden ejection.

89.     Defendant breached its duty by adopting and selling the defective design without proper safeguards.

90.     This defective design was a substantial factor in causing the dangerous stopper ejection events alleged by Plaintiffs and the putative Class Members, resulting in dangerous stopper ejection events and other harm during ordinary and foreseeable use.

91.     Defendant had actual and constructive knowledge of the defect well before the recall announcement, including consumer complaints, internal testing, and incident data accumulated over years. Defendant continued to market and sell the Affected Products without adequate warning or redesign.

92.     Plaintiffs and the Class suffered injury and damages, related losses, proximately caused by Defendant's negligent design.

**COUNT V**
**NEGLIGENT FAILURE TO WARN**
**(On behalf of the Plaintiffs and the Class)**

93.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

94.     Defendant owed a duty to provide adequate warnings and instructions regarding non-obvious risks known or reasonably knowable at the time of sale, and when appropriate, to provide post-sale warnings as knowledge of hazards emerged.

95.     The risk that internal pressure could build within the Affected Products during ordinary and foreseeable use and cause the stopper to suddenly and forcefully eject upon opening

was not open and obvious to ordinary consumers at the time of purchase. Consumers would not reasonably expect that storing hot or perishable contents in a sealed container could create sufficient internal pressure to cause the stopper to eject with force and cause injury.

96.     Defendant knew or, in the exercise of reasonable care, should have known of this hazard through pre-market design and testing, as well as post-sale consumer complaints, product reviews, and incident reports. Defendant has acknowledged at least 27 incidents involving forceful stopper ejection, including injuries requiring medical attention and instances of permanent vision loss, yet failed to timely provide adequate warnings, instructions, or interim safety guidance prior to issuing a recall.

97.     Defendant breached its duties by (a) omitting clear pre-sale warnings regarding the risk of pressure buildup and sudden stopper ejection; (b) failing to provide adequate instructions on how to safely open the container or mitigate internal pressure prior to removing the stopper; and (c) failing, post-sale, to promptly warn consumers or provide interim safety measures, such as revised instructions, warnings, or replacement components, once the hazard became known.

98.      The absence of adequate warnings and instructions was a substantial factor in causing injuries to Plaintiffs and Class Members during ordinary and intended use.

**<u>COUNT VI</u>**
**NEGLIGENCE**
**(On behalf of the Plaintiffs and the Class)**

99.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

100.    Defendant owed Plaintiffs and the Class a duty to exercise reasonable care in the design, testing, manufacture, instructions, and warnings for the Affected Products, including a post-sale duty to take reasonable steps once hazards became known.

25

101. Defendant breached these duties by, among other things, (a) designing and selling the Affected Products with a stopper that lacks an adequate pressure relief mechanism, thereby permitting dangerous internal pressure buildup; (b) failing to conduct or act upon reasonable pre-market testing regarding pressure accumulation and stopper ejection risks; (c) failing to provide adequate pre-sale warnings and instructions regarding the risk of pressure buildup and safe opening of the container; and (d) failing, post-sale, to timely warn prior purchasers, issue corrective instructions, or implement a prompt repair or replacement program after receiving consumer complaints, incident reports, and injury data.

102. The risks of internal pressure buildup and sudden, forceful stopper ejection were foreseeable to Defendant, and safer, feasible alternative designs and precautions were available at reasonable cost, including incorporation of an effective pressure relief mechanism, controlled venting systems, stopper designs that prevent ejection under pressure, and clear, prominent warnings and instructions regarding safe use.

103. Defendant's negligence was a substantial factor in causing the stopper ejection events and resulting injuries suffered by Plaintiffs and the Class during ordinary and intended use. Such harm was a reasonably foreseeable consequence of the breaches alleged.

104. As a direct and proximate result, Plaintiffs and the Class sustained damages, including overpayment, out-of-pocket losses, and diminution in value. Plaintiffs and Class Members primarily seek recovery for economic losses independent of any personal injury claims.

<u>COUNT VII</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**U.C.C. § 2-314**
**(On behalf of the Plaintiffs and the Class)**

105. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

26

106.    Defendant is a merchant that designed, manufactured, marketed, and sold the Affected Products for ordinary purposes of storing and consuming food and beverages.

107.    An implied warranty arose that the Affected Products were fit for the ordinary purposes for which such goods are used, including the safe storage and consumption of hot and perishable contents during normal and foreseeable use.

108.    The Affected Products were not merchantable at the time of sale because they were defectively designed with a stopper lacking an adequate pressure relief mechanism, which allows internal pressure to build when food or beverages are stored for extended periods. As a result, the stopper can suddenly and forcefully eject upon opening, exposing users to a significant risk of impact injuries, lacerations, and eye injuries during ordinary and foreseeable use.

109.    Defendant knew or should have known of this hazard through pre-market testing and post-sale complaints and reviews, yet continued sales without an adequate design fix or effective warnings.

110.    Plaintiffs and Class Members purchased the Affected Products from Defendant or its authorized retailers. To the extent privity is required, it is satisfied by purchases through Defendant's retail channels and/or because purchasers were intended third-party beneficiaries of Defendant's warranties.

111.    Any purported warranty disclaimer or limitation is unenforceable because it was not conspicuous, is unconscionable given the undisclosed safety defect, and in all events any limited remedy failed of its essential purpose.

112.    Defendant had actual notice from consumer complaints and injury reports, as well as a letter sent by Plaintiffs.

113.    Defendant's breach was a proximate cause of injuries and damages, including

27

economic damages, including overpayment, out-of-pocket costs, and diminution in value.

## COUNT VIII
### Violation of the New Jersey Consumer Fraud Act
### N.J.S.A. § 56:8-1, et seq.
### (On Behalf of Plaintiff George Euripides and the New Jersey Subclass)

114. Plaintiff George Euripides incorporates by reference all preceding paragraphs as though fully set forth herein.

115. Plaintiff Euripides brings this claim individually and on behalf of the New Jersey Subclass.

116. Defendant is a "person" within the meaning of N.J.S.A. § 56:8-1(d).

117. The Affected Products are "merchandise" within the meaning of N.J.S.A. § 56:8-1(c) because they are consumer goods sold to the public for personal, family, and household use.

118. The New Jersey Consumer Fraud Act prohibits, among other things, the act, use, or employment of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of merchandise.

119. Defendant engaged in unlawful conduct under the NJCFA by marketing, advertising, labeling, distributing, and selling the Affected Products as safe, reliable, durable, and suitable for storing hot and perishable foods and beverages, while failing to disclose that the Affected Products could build internal pressure during ordinary and foreseeable use and cause the stopper to suddenly and forcefully eject upon opening.

120. Defendant's omissions and representations were material because reasonable consumers, including Plaintiff Euripides and members of the New Jersey Subclass, would consider it important that the Affected Products lacked an adequate or effective pressure-relief mechanism

and posed a risk of sudden stopper ejection, impact injury, laceration, and eye injury during ordinary use.

121. Defendant also engaged in unlawful conduct by promoting the Affected Products' heat-retention, portability, stopper, and everyday-use features while omitting that those same conditions could create dangerous pressure buildup inside the container. Defendant's marketing conveyed that the products were safe and suitable for their intended use, while concealing the material safety defect later acknowledged through the recall.

122. Defendant knew or should have known that the Affected Products were defective, unsafe, and not suitable for their ordinary and intended purpose because the products were designed and sold with stoppers that lacked an adequate pressure-relief mechanism and because Defendant received or had access to consumer complaints, incident reports, product-return information, and other safety information concerning pressure buildup and forceful stopper ejection.

123. Defendant's conduct was consumer-oriented and occurred in connection with the sale and advertisement of merchandise to the public, including Plaintiff Euripides and members of the New Jersey Subclass.

124. Plaintiff Euripides and members of the New Jersey Subclass suffered an ascertainable loss as a result of Defendant's unlawful conduct. They purchased Affected Products that were worth less than represented, unsafe for their ordinary and intended use, and subject to recall due to an undisclosed pressure-related stopper-ejection defect.

125. Had Defendant disclosed the true nature of the defect and associated safety risk, Plaintiff Euripides and members of the New Jersey Subclass would not have purchased the Affected Products, or would have paid materially less for them.

29

126. The recall does not eliminate Plaintiff Euripides's and the New Jersey Subclass's ascertainable loss because it does not provide a refund, does not compensate consumers for the diminished value or overpayment at the time of purchase, does not compensate for loss of use, does not provide statutory damages, and does not provide full relief for consumers who purchased products that were unsafe and materially different from what Defendant represented.

127. Defendant's unlawful conduct caused Plaintiff Euripides's and the New Jersey Subclass's ascertainable losses because Defendant's misleading representations and omissions induced consumers to purchase the Affected Products and to pay more than the products were worth.

128. As a direct and proximate result of Defendant's violations of the NJCFA, Plaintiff Euripides and members of the New Jersey Subclass are entitled to all available relief, including actual damages, treble damages, attorneys' fees, filing fees, costs of suit, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class and Subclasses, pray for relief and judgment against Defendant as follows:

a. Certifying the Class and Subclasses pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as the representative of the Class, and designating Plaintiffs' counsel as Class Counsel;

b. Awarding Plaintiffs, the Class, and Subclasses compensatory damages;

c. An order requiring Defendant to implement a court-supervised repair and corrective-notice program for all Affected Products;

d. Corrective advertising and disclosure statements at points of sale and on

Defendant's website;

e. Disgorgement and restitution of monies received from Class Members as a result of the defective and misrepresented products;

f. Awarding Plaintiffs, the Class, and Subclasses appropriate relief, including but not limited to actual damages;

g. For declaratory and equitable relief, including restitution and disgorgement;

h. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

i. Awarding Plaintiffs, the Class, and Subclasses the costs of prosecuting this action, including expert witness fees;

j. Awarding Plaintiffs, the Class, and Subclasses reasonable attorneys' fees and costs as allowable by law;

k. Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to cure inadequate recall and notification processes, correct its manufacturing and marketing practices, and to comply with the relevant consumer protection statutes;

l. Awarding pre-judgment and post-judgment interest;

m. For punitive damages; and

n. Granting any other relief as this Court may deem just and proper.

31

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: May 4, 2026                                              **LEVI & KORSINSKY, LLP**


By: */s/ Tyler A. Litke*
Tyler A. Litke (6330041)
Mark S. Reich (*Pro Hac Vice Forthcoming*)
Michael N. Pollack (*Pro Hac Vice Forthcoming*)
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: tlitke@zlk.com
Email: mreich@zlk.com
Email: mpollack@zlk.com

*Counsel for Plaintiffs and the proposed Class and Subclasses*

32