**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

IN RE: THERMOS RECALL LITIGATION

Civil Action No. 1:26-cv-05163

The Honorable Joan H. Lefkow

**CONSOLIDATED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Daniel Meaney, George Euripides, and Katie Pence ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this Consolidated Class Action Complaint against Defendant Thermos, L.L.C. ("Defendant" or "Thermos"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

## INTRODUCTION

1. This action seeks to remedy the deceptive and/ or illegal business practices of Defendant with respect to the manufacturing, marketing, and sale of Defendant's Thermos Stainless King 3000 and 3020 Food Jars and Thermos Sportsman 3010 Food & Beverage Bottles (hereinafter the "Affected Products").

2. Defendant improperly, deceptively, and misleadingly labeled and marketed its Recalled Products to reasonable consumers, like Plaintiffs, by omitting and not disclosing to consumers on its packaging that if perishable food or beverages are stored in the container for an

extended period of time, the stopper can forcefully eject when opened, which can result in serious impact injury and laceration hazards to the consumer. The reason the stopper can forcefully eject when opened is that the stopper does not contain a pressure release valve in its center (the "Defect").

3. Due to the danger of serious injuries posed by the Defect, Defendant issued a recall of 8.2 million of the Affected Products on April 30, 2026 (the "Recall").[1]

4. The Recall is insufficient to compensate consumers such as Plaintiff for numerous reasons, including that it fails to offer any monetary relief to Plaintiff and Class Members who purchased the Affected Products. Instead of providing a proper remedy, Defendant merely directs consumers to obtain a replacement stopper or return the Recalled Product to Defendant—a remedy that imposes burdens of identification, contact, and delay on consumers. [2]

5. Defendant has received at least 27 reports of incidents involving the stopper forcefully ejecting and striking consumers, including injuries requiring medical attention and three instances of permanent vision loss. [3]

6. Plaintiffs and other consumers had a reasonable expectation that the Affected Products would be safe for their intended use, namely the storage and consumption of food and beverages without risk of sudden and forceful ejection of components capable of causing serious injury. [4]

7. Thermos' marketing and product labeling emphasize durability, reliability, and suitability for storing hot or perishable contents, including representing the products as part of its

---

[1] *Thermos Recalls 8.2 Million Stainless King Food Jars and Bottles Due to Serious Impact Injury and Laceration Hazards*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/Thermos-Recalls-8-2-Million-Stainless-King-Food-Jars-and-Bottles-Due-to-Serious-Impact-Injury-and-Laceration-Hazards (last visited September 3, 2026).
[2] *Id.*
[3] *Id.*
[4] *Id.*

"Stainless King" line of food jars and insulated beverage containers. However, these representations are misleading by omission, as Defendant failed to disclose that the Affected Products lack an adequate pressure relief mechanism and could become pressurized during normal and foreseeable use, creating a dangerous condition.[5] *See Figure 1 below*.




*Figure 1: Screenshot from Thermos' website showing the claims made on the page about the effectiveness of its food jars*

8. Defendant provided general use and care instructions for the Affected Products, including directions regarding cleaning and limiting storage duration, but failed to include any

[5] *Care and Use Guide Vacuum Insulated Stainless Food Jar*, AMAZON, https://m.media-amazon.com/images/I/C1I1MruKM%2BL.pdf (last visited September 3, 2026).

warnings regarding the risk that internal pressure could build during normal use and cause the stopper to forcefully eject upon opening.[6]

9. Upon information and belief, the product packaging, labeling, instructions, and advertising for the Affected Products failed to adequately warn consumers that the containers' stopper lacks an adequate or effective pressure-relief feature, which can cause pressure to build inside and result in the stopper forcefully ejecting upon opening, posing serious risks of impact injuries, lacerations, and other harm to users.

10. Those representations regarding the safety of the Affected Products were false and misleading, and, as evidenced by Thermos' own recall and admissions, the Affected Products are not safe for their intended use.

11. Those representations about safety omitted critical safety details.

12. In Thermos' own marketing and promotional materials, the Affected Products are presented as safe, convenient, and suitable for everyday use with hot contents, encouraging consumers to open and use the containers in close proximity to their faces and hands. These representations reinforce a message of safety and ease of use while omitting any disclosure that the products' stopper lacks an adequate or effective pressure-relief feature, which can cause internal pressure to build and result in the stopper forcefully ejecting upon opening, a material hazard now acknowledged by the recall.[7]

13. Thermos had notice of defects in the Affected Products from publicly available

---

[6] *16oz Stainless King Food Jar*, THERMOS, https://thermos.com/products/stainless-king-food-jar-16oz?_pos=1&_sid=aed1affa0&_ss=r&variant=40160981745820 (last visited September 3, 2026); and *24oz Stainless King Food Jar*, THERMOS, https://thermos.com/products/stainless-king-food-jar-24oz?variant=40160989053084 (last visited September 3, 2026)

[7] *See*, *Thermos Recalls 8.2 Million Stainless King Food Jars and Bottles Due to Serious Impact Injury and Laceration Hazards,* UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/Thermos-Recalls-8-2-Million-Stainless-King-Food-Jars-and-Bottles-Due-to-Serious-Impact-Injury-and-Laceration-Hazards (last visited September 3, 2026).

consumer complaints well before the recall. For example, a consumer incident report submitted to SaferProducts.gov on or about April 12, 2024, described a Thermos Stainless King 16 oz vacuum-insulated food jar "explosively decompressing" upon opening, producing a loud bang and causing the lid to become a high-velocity projectile. The consumer reported that the sudden release of built-up internal pressure forcefully ejected both the contents and the lid, which traveled across the kitchen, struck a countertop edge, ricocheted back toward the user, continued an additional distance of approximately 8–10 feet, and struck surrounding surfaces before coming to rest, all within approximately one second and without any meaningful opportunity to react or avoid harm. Although no physical injury occurred in that instance, the report underscores the severity and unpredictability of the defect, including the risk of serious impact injuries, lacerations, and potential eye damage, particularly in a household setting with a minor present, and demonstrates that Thermos was on notice of the dangerous pressure buildup and forceful lid ejection well before the recall, yet failed to adequately warn consumers or implement a safer alternative design.[8]

[8] *See Incident Report Detail*, SAFERPRODUCTS.GOV, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4692794 (last visited September 3, 2026) (51 YO consumer's vacuum container decompressed through top opening with a loud bang and lid flew out. Food inside flew and lid ricocheted against a countertop. Consumer and 15 YO child were not injured).



**Incident Report Details**

**Attachments (2)**

Images

**Report Summary**

51 YO consumer's vacuum container decompressed through top opening with a loud bang and lid flew out. Food inside flew and lid ricocheted against a countertop. Consumer and 15 YO child were not injured.

**Product Details**

**Product Description:** Thermos brand 16 oz thermos. "Thermos stainless king vacuum insulated food jar with spoon." Body is midnight blue in color. Folding steel spoon that seats in the lid. A plastic/silicone clear gasket that seats at the bottom of the lid that helps ensure a seal. Stainless steel top that fits over the black plastic lid. Stainless interior. Stamp on bottom which reads " United States Patent Pending D587,534".

**Manufacturer/Importer/Private Labeler Name:** Thermos L.L.C.

**Brand Name:** Thermos

**Model Name or Number:** SK3000

**Incident Details**

**Incident Description:** On 4/12/2024 I was standing in front of my kitchen sink and attempting to open a Thermos brand 16 oz thermos (the type that has a folding spoon that fits into the lid) when the thermos explosively decompressed through the top opening (with a loud bang) and the lid became a projectile. The force of the decompression ejected food from the thermos and launched the lid at high speed towards my kitchen sink, where the lid contacted the countertop edge and ricocheted back towards me to my immediate left, traveled an additional 8-10 feet before contacting a kitchen cabinet and ricocheting again onto the floor. Time elapsed from decompression to the time that the lid came to a rest was approximately one second.

**Incident Date:** 4/12/2024

**Incident Location:** Home/Apartment/Condominium

**Victims Involved**

**Injury Information:** Incident, No Injury

**My Relationship to the Victim:** My Child

**Sex:**

**Victim's Age When Incident Occurred:** 15 years

**Comments from the Manufacturer/Private Labeler**

**Thermos L.L.C.**: Thermos L.L.C. spoke with the consumer and asked for the product to be sent back (with postage pre-paid). We have yet to receive the product to inspect. However, from the comments from the consumer, the care & use instructions were not followed. The consumer stated there were no injuries. We have sent replacement products to the consumer.

**Additional Details**

**Submitter has product?:** Yes

**Product was damaged before incident?:** No

**Product was modified before incident?:**

*Figure 2 - A consumer review on Saferproducts.gov*

14. Accordingly, Plaintiffs bring this action individually and on behalf of the proposed Nationwide Class, New York Subclass, and New Jersey Subclass, as applicable, to recover damages, restitution, equitable relief, and all other available remedies for: (i) violation of New York General Business Law § 349 on behalf of Plaintiff Daniel Meaney and the New York Subclass; (ii) violation of New York General Business Law § 350 on behalf of Plaintiff Daniel Meaney and the New York Subclass; (iii) unjust enrichment on behalf of Plaintiffs and the Nationwide Class; (iv) negligent design on behalf of Plaintiffs and the Nationwide Class; (v) negligent failure to warn on behalf of Plaintiffs and the Nationwide Class; (vi) negligence on behalf of Plaintiffs and the Nationwide Class; (vii) breach of the implied warranty of merchantability on behalf of Plaintiffs and the Nationwide Class; (viii) violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq*. on behalf of Plaintiff George Euripides and the New Jersey Subclass; (ix) breach of express warranty on behalf of Plaintiffs and the Nationwide Class; and (x) negligent misrepresentation on behalf of Plaintiffs and the Nationwide Class.

## PARTIES

15. Plaintiff George Euripides is a citizen of Haledon, New Jersey, and purchased a Thermos Stainless King Vacuum-Insulated Food Jar with Spoon, 16 Ounce, Matte Black through Amazon on October 9, 2021, paying approximately $21.79 per unit. Plaintiff Euripides purchased three such products for personal use. While using the product as intended, Plaintiff Euripides experienced a dangerous incident in which the container suddenly and forcefully ejected its stopper near his face due to internal pressure buildup. Plaintiff Euripides received a recall notice regarding the Affected Product. Plaintiff Euripides experienced emotional distress upon learning of the defect and the risk posed by the product. Prior to purchase, Plaintiff Euripides reviewed product descriptions on Amazon and/or Thermos's website. Plaintiff Euripides does not use the product anymore and remains concerned about the safety of the product and the risk of harm to himself and others. Plaintiff Euripides would not have purchased the product or would have paid less for it had he known of the defect

16. Plaintiff Daniel Meaney is a citizen of Long Beach, New York, and purchased a Thermos Stainless King Vacuum-Insulated Food Jar, 24 Ounce, Army Green through Amazon on September 21, 2024 for approximately $27.99. Plaintiff Meaney received a recall notice. Plaintiff Meaney was exposed to the same Defect affecting the Affected Products, including the risk of sudden and forceful stopper ejection due to internal pressure buildup. Prior to purchase, Plaintiff Meaney was exposed to Defendant's marketing and product descriptions. Plaintiff Meaney experienced concern and distress upon learning of the recall and the associated safety risks, and would not have purchased the product or would have paid less for it had he known of the defect.

17. Plaintiff Katie Pence is a citizen and resident of Hamilton County, Ohio. Plaintiff Pence purchased a 24-ounce Thermos Stainless King Food Jar, Model No. SK3020, at a Walmart

in Cincinnati, Ohio in 2019. Before purchasing, Plaintiff Pence reviewed the Affected Product's packaging and labeling and reasonably relied on Defendant's representations that the product was safe for its intended use. Plaintiff Pence used the Affected Product as intended. She was unaware of the Defect at the time of purchase and would not have purchased the Affected Product, or would have paid less for it, had she known that the stopper lacked an adequate pressure relief mechanism and could forcefully eject upon opening.

18. Defendant Thermos is a Delaware corporation with its principal place of business located in Schaumburg, Illinois. Thermos designs, manufactures, markets, distributes, advertises, warrants, and sells consumer beverage and food containers, including the Affected Products. At all relevant times hereto, Thermos created and/or authorized the false and misleading advertising, labeling, and representations regarding the safety and performance of the Affected Products.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

20. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in Schaumburg, Illinois, within this District.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and Defendant is subject to personal jurisdiction in this District for the reasons set forth above.

## FACTUAL ALLEGATIONS

### I. Defendant Manufactured, Distributed, Marketed, and Sold the Affected Products

22. Defendant manufactured, distributed, marketed, and sold the Affected Products. The Affected Products were specifically marketed as safe, convenient, and suitable for storing and consuming hot foods and beverages.

23. Defendant engaged in marketing efforts to promote the Affected Products as safe, convenient, and suitable for storing hot and perishable foods for extended periods. Defendant and its retail partners, including Walmart, emphasized features such as "Thermos vacuum insulation technology for maximum temperature retention," representing that the products can "keep food cold for 14 hours and hot for 9 hours." By promoting the Affected Products' ability to retain heat over extended periods and their suitability for everyday food storage, Defendant encouraged precisely the type of use that creates internal pressure, while failing to disclose the associated risk that the stopper could forcefully eject and cause serious injury.[9]

24. The Affected Products were also marketed on Amazon, where product listings emphasize performance, safety, and convenience features. For example, Amazon listings for the Affected Products highlight "Thermos vacuum insulation technology for maximum temperature retention," "high quality 18/8 stainless steel," and a "Dura-Guard pressure relief stopper that enhances insulated performance and removes easily." These representations reinforce that the products are designed for storing hot contents in sealed conditions and promote the stopper as both functional and safe. However, these marketing statements are misleading by omission because they fail to disclose that the stopper lacks an adequate pressure relief mechanism and can forcefully

---

[9] *Thermos 16 oz Stainless King Vacuum Insulated Food Jar (Model SK3000)*, WALMART, https://www.walmart.com/ip/Thermos-Stainless-King-Food-Jar-with-Folding-Spoon-Army-Green-16oz/713226486 (last visited September 3, 2026).

eject when internal pressure builds, posing a serious risk of injury to consumers.[10]

25. Defendant sold the Affected Products nationwide through its own website, Thermos.com, and through third-party retailers, including Target and Walmart, from at least March 2008 through July 2024, for approximately $30 per unit. On April 30, 2026, Defendant announced a nationwide recall of approximately 8.2 million units of the Affected Products after receiving at least 27 reports of incidents involving forceful stopper ejection, including injuries requiring medical attention and three reports of permanent vision loss.[11]




*Figure 3 - Screenshot from CPSC's website showing Thermos Stainless King 3000 and 3020 Food Jars and Thermos Sportsman 3010 Food & Beverage Bottles*

## II. <u>Defendant's Design Poses a Serious Injury Hazard In The Affected Products</u>

26. Defendant's Affected Products pose a serious injury hazard, as the containers can build internal pressure and cause the stopper to suddenly and forcefully eject upon opening, striking users and causing dangerous stopper ejection events and associated risks to consumers.

---

[10] *THERMOS ICON Stainless Steel Food Jar with Spoon, 16 Ounce, Granite,* AMAZON, https://www.amazon.com/THERMOS (last visited May 4, 2026).

[11] *See*, *Thermos Recalls 8.2 Million Stainless King Food Jars and Bottles Due to Serious Impact Injury and Laceration Hazards*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/Thermos-Recalls-8-2-Million-Stainless-King-Food-Jars-and-Bottles-Due-to-Serious-Impact-Injury-and-Laceration-Hazards (last visited September 3, 2026).This comprised of approximately 5.8 million Stainless King Food Jars and approximately 2.3 million Sportsman Food & Beverage Bottles.

27. At least 27 incidents, including multiple reports of impact and laceration injuries, some requiring medical attention and three cases of permanent vision loss, have been reported to date. Consumers purchased or received these Affected Products under the belief that they were safe for household use; instead, they have been subjected to serious risks of injury.

28. Plaintiffs were exposed to the same defect and risk of injury.

29. The Affected Products were manufactured and distributed with stoppers that lack an adequate pressure-relief mechanism, permitting internal pressure to build and causing the stopper to eject unexpectedly during opening. Despite the existence of this hazard, the product manuals, box labeling, packaging, and online materials did not include any warnings that the stopper could suddenly eject or cause injury.

30. Feasible, safer alternative designs were available at reasonable cost, at all relevant times, including, but not limited to, (a) incorporation of an adequate or effective pressure-relief mechanism to safely release built-up internal pressure prior to opening; (b) redesigned stoppers that prevent sudden or forceful ejection; (c) vented lid systems or staged-opening features to allow gradual pressure release; (d) impact-resistant components to reduce the risk of injury upon opening; and (e) clear and conspicuous warning labels on the Affected Products.

## III. Defendant's False and Misleading Advertising Campaign to Promote Safety and Induce Consumers to Purchase the Affected Products

31. Thermos' own product pages make affirmative safety, performance, and convenience claims that are misleading by omission. For example, Thermos advertises that its Stainless King™ Food Jars "keep hot food hot for up to 14 hours and cold food cold for up to 24 hours," emphasizing their suitability for storing food for extended periods and stating, "Your favorite meal goes where you go." The product descriptions further highlight features such as "double-wall vacuum insulation," a "wide-mouth opening" for ease of use, and a "pressure relief

stopper." These representations promote the Affected Products as safe and reliable for the prolonged storage of hot and perishable contents. However, nowhere do the product pages or accompanying materials disclose the material risk that pressure can build within the container during normal and foreseeable use, causing the stopper to forcefully eject upon opening and creating a serious risk of impact injuries and lacerations, including permanent eye injuries.[12]

32. When it sold the Affected Products, Thermos' consumer-facing marketing was materially misleading and induced consumers to purchase and use the products under a false sense of safety. By promoting the stopper as a functional and beneficial feature while omitting the material risk that it could eject under pressure, Defendant engaged in deceptive and misleading advertising practices.

33. Nowhere does Thermos, on its product pages, packaging, or in its use and care instructions, disclose the material risk that internal pressure may build during normal and foreseeable use and cause the stopper to forcefully eject upon opening, creating a significant risk of impact injuries and lacerations, including severe eye injuries.[13]

34. Food storage containers such as the Affected Products are expected to be safe for their intended use, including the storage of hot and perishable contents for extended periods. Consumers reasonably expect that such products will be designed to safely manage internal pressure conditions generated during ordinary use and will not present a risk of sudden component ejection capable of causing injury.

---

[12] *16oz Stainless King Food Jar*, THERMOS, https://thermos.com/products/stainless-king-food-jar-16oz?_pos=1&_sid=aed1affa0&_ss=r&variant=40160981745820 (last visited September 3, 2026); and *24oz Stainless King Food Jar*, THERMOS, https://thermos.com/products/stainless-king-food-jar-24oz?variant=40160989053084 (last visited September 3, 2026).

[13] *16oz Stainless King Food Jar,* THERMOS, https://thermos.com/products/stainless-king-food-jar-16oz?_pos=1&_sid=aed1affa0&_ss=r&variant=40160981745820 (last visited September 3, 2026); and *24oz Stainless King Food Jar,* THERMOS, https://thermos.com/products/stainless-king-food-jar-24oz?variant=40160989053084 (last visited September 3, 2026).

35. Defendant positioned itself in the marketplace as a trusted and safety-conscious manufacturer of insulated food and beverage containers, promoting its Stainless King™ line as durable, reliable, and suitable for everyday use. By emphasizing heat retention, portability, and convenience as key features, Defendant cultivated consumer trust and distinguished its products from lower-cost alternatives. These marketing efforts enabled Defendant to sell the Affected Products through major retail platforms, including Amazon, Walmart, Target, and its own website.

36. Consumers reasonably relied on Defendant's representations that the Affected Products were safe for their intended use and incorporated appropriate design features to manage internal pressure and prevent injury. Defendant's marketing reinforced the perception that the products were carefully engineered, tested, and safe for household use, including for storing hot food and beverages in sealed containers.

37. As a result, consumers, including Plaintiffs, were induced to purchase and pay for the Affected Products based on Defendant's representations of safety, quality, and performance. In reality, the Affected Products were defectively designed and posed a serious risk of injury due to the lack of an adequate pressure relief mechanism in the stopper, as confirmed by the nationwide recall issued on April 30, 2026, following reports of at least 27 incidents, including injuries requiring medical attention and multiple instances of permanent vision loss.[14]

## IV. Consumers Have Been Harmed by Defendant's False and Misleading Representations

38. Defendant knew, or should have known, that the advertising and labeling claims made on the Affected Products are false and misleading.

---

[14] *Thermos Recalls 8.2 Million Stainless King Food Jars and Bottles Due to Serious Impact Injury and Laceration Hazards,* CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/Thermos-Recalls-8-2-Million-Stainless-King-Food-Jars-and-Bottles-Due-to-Serious-Impact-Injury-and-Laceration-Hazards (last visited September 3, 2026).

39. Defendant had actual and/or constructive knowledge of the Defect in the Affected Products prior to the April 30, 2026, recall, including through consumer complaints, product returns, and incident reports involving stopper failures and sealing component issues.

40. Thermos has acknowledged at least 27 reported incidents in which consumers were struck by a stopper that forcefully ejected upon opening the container, including reports of impact and laceration injuries requiring medical attention and three instances of permanent vision loss.[15]

41. Defendant knew, or should have known, that the Affected Products were not safe for their intended use given the absence of an adequate pressure relief mechanism in the stopper, a design defect that rendered the products unreasonably dangerous during ordinary and foreseeable use.

42. Defendant's marketing materials touted features such as the ability to keep food hot for extended periods, and the inclusion of a "pressure relief stopper" that enhances insulated performance and removes easily. These representations were misleading because they omitted the material fact that the stopper lacked an adequate pressure relief mechanism and could suddenly and forcefully eject under pressure, creating a foreseeable risk of serious injury to consumers.[16]

43. Defendant knew, or should have known, that the advertising for the Affected Products misrepresented material facts concerning safety, including the risk of pressure buildup and forceful stopper ejection.

44. Defendant knew, or should have known, that the representations and statements made through its labeling and advertising would mislead consumers to purchase the Affected

[15] *Id.*

[16] *16oz Stainless King Food Jar,* THERMOS, https://thermos.com/products/stainless-king-food-jar-16oz?_pos=1&_sid=aed1affa0&_ss=r&variant=40160981745820 (last visited September 3, 2026); and *24oz Stainless King Food Jar,* THERMOS, https://thermos.com/products/stainless-king-food-jar-24oz?variant=40160989053084 (last visited September 3, 2026).

Products instead of competitors' cheaper products based on a false belief that the Affected Products were safer and suitable for use with hot contents.

45. Had Defendant disclosed the true risks of the Affected Products, Plaintiffs would not have purchased the Affected Products, or would have paid less for them, had the Affected Products been truthfully and accurately labeled.

## V. <u>The Affected Products Have Been the Subject of a Recall</u>

46. On April 30, 2026, Thermos announced a recall of approximately 8.2 million Affected Products, including Stainless King food jars and Sportsman bottles. The recall followed at least 27 reported incidents involving consumers being struck by stoppers that forcefully ejected upon opening, resulting in impact and laceration injuries, including multiple reports requiring medical attention and three cases of permanent vision loss. The U.S. Consumer Product Safety Commission concluded that the Affected Products pose a significant risk of serious impact injury and laceration hazards.

47. Defendant Thermos has advised consumers to immediately stop using the recalled Affected Products and to contact Thermos to receive a free replacement lid designed to mitigate the pressure-related hazard.[17]

48. The recall directed consumers to contact Thermos to obtain a free replacement lid. There is no evidence that this will remedy the defect or make consumers whole.

49. The recall does not fully remedy the defect or provide complete relief, as it does not compensate consumers for the full purchase price or eliminate future risk, give consumers statutory damages, and consumers remain unable to rely on Defendant's safety representations. Additionally, the recall does not offer consumers the option to obtain a cash refund, instead

---

[17] *Id.*

limiting relief to a replacement lid from a company they may no longer trust. Further, the replacement remedy may not fully eliminate the risk associated with pressure buildup and the forceful ejection of the stopper.

50. Thermos placed the recall notice in a remote corner of its site that few consumers would encounter.[18]

## VI. FED. R. CIV. P. 9(b) ALLEGATIONS

51. Although Thermos is in the best position to know information about the design, manufacture, distribution, and sale of the Affected Products, as well as the facts surrounding the Defect during the relevant timeframe, to the extent necessary, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

52. **WHO**: Thermos made material misrepresentations and omissions of fact through its marketing, on its website at Thermos.com, on the Affected Products' packaging, labeling, owner's manuals, and use and care instructions, through its warranties, through its responses to warranty claims and consumer inquiries, and through authorized retailers of the Affected Products, including Amazon, Target, and Walmart. Those representations included statements that the Affected Products were safe, durable, and suitable for storing hot or perishable contents, that they employ "Thermos vacuum insulation technology for maximum temperature retention" and "double-wall vacuum insulation," that they are constructed of "high quality 18/8 stainless steel," that they "keep hot food hot for up to 14 hours and cold food cold for up to 24 hours," and that they are equipped with a "Dura-Guard pressure relief stopper that enhances insulated performance and removes easily."[19]

---

[18] *Product Recall*, THERMOS https://thermos.com/pages/product-recalls (last visited September 3, 2026).
[19] *THERMOS ICON Stainless Steel Food Jar with Spoon, 16 Ounce, Granite,* AMAZON, https://www.amazon.com/THERMOS (last visited May 4, 2026).

53. **WHAT**: Thermos's conduct was, and continues to be, fraudulent because it omitted and concealed that the Affected Products are defective, unsafe, and unsuitable for their intended use in that the Affected Products contain a uniform Defect, namely, a stopper that lacks an adequate or effective pressure relief mechanism and that may forcefully eject when the Affected Product is opened after internal pressure has built up. Thermos affirmatively represented that the stopper was a pressure relief stopper when it was not. Thermos failed to warn Plaintiffs and Class Members that the Affected Products contained the Defect, were not suitable for their intended use, and posed a risk of impact injury, laceration, and eye injury. Thermos's conduct had the effect of deceiving Plaintiffs and Class Members into believing that the Affected Products were not defective. Thermos knew, or should have known, that the existence of the Defect is material to a reasonable consumer, including Plaintiffs and Class Members, and affects purchasing decisions, and yet Thermos omitted any warning that the Affected Products are defective.

54. **WHEN**: Thermos made these material misrepresentations and omissions throughout the Class Period, including at the time each Plaintiff purchased an Affected Product. Plaintiff George Euripides purchased on or about October 9, 2021. Plaintiff Daniel Meaney purchased in or about 2024. Plaintiff Katie Pence purchased during the Class Period. Thermos continued to make these misrepresentations and omissions after each purchase, including when consumers contacted Thermos regarding the Affected Products, and continuously until it announced the recall on April 30, 2026. Thermos possessed knowledge of the Defect no later than April 12, 2024, when a consumer submitted an incident report to SaferProducts.gov describing a Thermos Stainless King 16-ounce vacuum-insulated food jar explosively decompressing upon opening, and upon information and belief possessed that knowledge substantially earlier through pre-market design and testing data, warranty claims, product returns, and consumer complaints.

55. **WHERE**: Thermos's marketing message and omissions were uniform and pervasive. They were carried through material misrepresentations and omissions on the Affected Products' packaging and labeling, in the owner's manuals and use and care instructions accompanying each Affected Product, on Thermos's website at Thermos.com, and on the websites of authorized retailers, including Amazon, Target, and Walmart. Plaintiffs Euripides and Meaney purchased through Amazon and were exposed to Thermos's representations there and on Thermos.com. Plaintiff Pence purchased at a Walmart in Cincinnati, Ohio, and was exposed to Thermos's representations on the Affected Product's packaging and labeling.

56. **HOW**: Thermos misrepresented material facts regarding the Affected Products by representing them as safe, durable, and suitable for storing hot and perishable contents for extended periods, and by describing the stopper as a "pressure relief stopper" and a "Dura-Guard pressure relief stopper that enhances insulated performance," while concealing that the stopper lacks an adequate or effective pressure relief mechanism and that internal pressure can build during ordinary and foreseeable use and cause the stopper to forcefully eject upon opening. Thermos further concealed the Defect by promoting the Affected Products' heat retention over 9, 14, and 24 hours, thereby encouraging the precise use that generates dangerous internal pressure, without disclosing the associated hazard. Thermos possessed exclusive knowledge of its design specifications, pre-market testing data, post-sale incident reports, warranty claims, and consumer complaints, none of which was available to Plaintiffs or Class Members, and it failed to disclose that information at any point before the recall.

57. **WHY**: Thermos made these material misrepresentations and omissions for the purpose of inducing Plaintiffs, Class Members, and all reasonable consumers to purchase the Affected Products and to pay a premium price for them, and to distinguish the Affected Products

from lower-cost alternatives. The effect was that Thermos sold approximately 8.2 million Affected Products in the United States and profited from those sales throughout the Class Period.

58. **INJURY**: Plaintiffs and Class Members purchased, purchased more of, or paid more for the Affected Products than they otherwise would have absent Thermos's misrepresentations and omissions. Had Thermos disclosed the Defect, Plaintiffs and Class Members would not have purchased the Affected Products or would have paid materially less for them.

## TOLLING

59. The statutes of limitations applicable to Plaintiffs' and the Classes' claims were tolled by Thermos's conduct and Plaintiffs' and Class Members' delayed discovery of their claims.

60. As alleged above, Plaintiffs and members of the Classes did not know, and could not have known, that the Affected Products were dangerous. Plaintiffs and members of the Classes could not have discovered Thermos' unlawful conduct with reasonable diligence.

## CLASS ACTION ALLEGATIONS

61. Plaintiffs bring this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Affected Products in the United States for personal/household use within any applicable limitations period (the "Nationwide Class").

62. Plaintiff Daniel Meaney brings this action individually and on behalf of the following New York subclass:

> All persons who purchased one or more of Defendant's Affected Products in the state of New York for personal/household use within any applicable limitations period (the "New York Subclass").

63. Plaintiff George Euripides brings this action individually and on behalf of the

following New Jersey subclass:

> All persons who purchased one or more of Defendant's Affected Products in the state of New Jersey for personal/household use within any applicable limitations period (the "New Jersey Subclass").

64. Excluded from the Class and Subclasses are: (1) any Judge or Magistrate presiding over this action and any members of their families; and (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, any entities in which Defendant or its parents and any entities in which Defendant have a controlling interest, and its current or former employees, officers, and directors.

65. Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiffs although 8.2 million Affected Products were sold, but joinder of individual members herein is impractical. The Class is likely comprised of millions of consumers. The precise number of Class Members and their addresses are unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

66. Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

a. Whether the stopper design of the Affected Products, including the absence of an adequate pressure relief mechanism, posed an unreasonable risk of sudden and forceful ejection under normal and foreseeable use;

b. Whether Defendant's marketing omitted material defects/hazards;

c. Whether the recall demonstrates a feasible alternative design;

d. Whether the marketing, advertising, packaging, and labeling for the Affected Products were false, misleading, and/or deceptive;

e. Whether Defendant violated the state consumer protection statutes alleged herein;

f. Whether Defendant was unjustly enriched; and

g. The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

67. Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class Members, purchased one of the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

68. Adequacy of Representation (Rule 23(a)(4)): Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and he has retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class.

69. Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments, delay, and

expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

70. Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF NEW YORK DECEPTIVE ACTS AND PRACTICES LAW
### NEW YORK GENERAL BUSINESS LAW § 349
### (On behalf of Plaintiff Daniel Meaney and the New York Subclass)

71. Plaintiff Daniel Meaney ("Plaintiffs" for the purposes of this Count), hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

72. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

73. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the New York Subclass Members seek monetary damages against Defendant, enjoining Defendant from

inaccurately describing, labeling, marketing, and promoting the Products.

74. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

75. Defendant's improper consumer-oriented conduct, including failing to disclose that the Affected Products can build internal pressure and cause the stopper to suddenly and forcefully eject during normal use, is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the New York Subclass to purchase Defendant's Affected Products and to use them when they otherwise would not have. Defendant made these untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

76. Plaintiffs and the New York Subclass have been injured inasmuch as they purchased Affected Products that were mislabeled and worth less than they would have paid. Accordingly, Plaintiffs and the New York Subclass received less than what they bargained and paid for.

77. Defendant's advertising and Affected Products' packaging and labeling induced Plaintiffs and the New York Subclass to buy Defendant's Affected Products.

78. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a), and Plaintiffs and the New York Subclass have been damaged thereby.

79. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the New York Subclass are entitled to monetary, statutory, compensatory, treble, and punitive damages, interest, and attorneys' fees and costs.

**COUNT II**
**VIOLATION OF NEW YORK FALSE ADVERTISING LAW**
**NEW YORK GENERAL BUSINESS LAW § 350**
**(On behalf of Plaintiff Daniel Meaney and the New York Subclass)**

80. Plaintiff Daniel Meaney ("Plaintiff" for purposes of this Count), hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

81. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

a. False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

82. N.Y. Gen. Bus. Law § 350a (1) provides, in part, as follows:

a. The term "false advertising," including labeling, of a commodity, or of the kind, character, terms, or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual.

83. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Affected Products inasmuch as they misrepresent that the Affected Products are safe for use and fail to disclose that the products can build internal pressure and cause the stopper to suddenly and forcefully eject during normal use.

84. Plaintiffs and the New York Subclass have been injured inasmuch as they saw the

labeling, packaging, and advertising and purchased Affected Products that were mislabeled and are worth less than plaintiffs would have paid. Accordingly, Plaintiffs and the New York Subclass received less than what they bargained and paid for.

85. Defendant's advertising, packaging, and Affected Products' labeling induced Plaintiffs and the New York Subclass to buy Defendant's Affected Products.

86. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

87. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

88. Defendant made the material misrepresentations described in this Complaint in its advertising and on the Affected Products' packaging and labeling.

89. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers who purchased the Affected Products were and continue to be exposed to the Defendant's material misrepresentations. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the New York Subclass are entitled to monetary, statutory, compensatory, treble, and punitive damages, interest, and attorneys' fees and costs.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of the Plaintiffs and the Nationwide Class)**

90. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

91. Plaintiffs and Class Members conferred benefits upon Defendant. Plaintiffs and Class Members paid money for Defendant's Affected Products that they would not have purchased

or would not have purchased on the same terms, had they known that the Affected Products were unsafe or were defectively designed and unsafe due to pressure-related stopper ejection.

92. Defendant unjustly retained the benefits conferred upon by Plaintiffs and Class Members.

93. Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Products were unsafe and could not perform as advertised. If Plaintiffs and Class Members had known the true nature of Defendant's Affected Products, they would not have purchased the products. Plaintiffs and Class Members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

94. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT IV
## NEGLIGENT DESIGN
## (On behalf of the Plaintiffs and the Nationwide Class)

95. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

96. Defendant had a duty to exercise reasonable care in the design of the Affected Products to avoid unreasonable, foreseeable risks of harm where safer, feasible alternatives existed.

97. The Affected Products are designed to store hot and perishable contents in a sealed container, which foreseeably leads to internal pressure buildup over time. In ordinary use, consumers open the container by removing the stopper, placing their face and hands in close

proximity to the opening, thereby positioning themselves directly within the zone of danger because the design does not safely regulate or release internal pressure prior to opening.

98. Feasible, safer alternative designs were available at reasonable cost, including, but not limited to, (a) incorporation of an effective pressure relief mechanism within the stopper; (b) a venting system to safely release internal pressure prior to opening; (c) stopper designs that prevent forceful ejection under pressurized conditions; (d) improved sealing components that maintain integrity without creating dangerous pressure buildup; and (e) clear and adequate warning labels regarding the risk of pressure accumulation and sudden ejection.

99. Defendant breached its duty by adopting and selling the defective design without proper safeguards.

100. This defective design was a substantial factor in causing the dangerous stopper ejection events alleged by Plaintiffs and the putative Class Members, resulting in dangerous stopper ejection events and other harm during ordinary and foreseeable use.

101. Defendant had actual and constructive knowledge of the defect well before the recall announcement, including consumer complaints, internal testing, and incident data accumulated over years. Defendant continued to market and sell the Affected Products without adequate warning or redesign.

102. Plaintiffs and the Class suffered injury and damages, related losses, proximately caused by Defendant's negligent design.

**COUNT V**
**NEGLIGENT FAILURE TO WARN**
**(On behalf of the Plaintiffs and the Nationwide Class)**

103. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

104. Defendant owed a duty to provide adequate warnings and instructions regarding non-obvious risks known or reasonably knowable at the time of sale, and when appropriate, to provide post-sale warnings as knowledge of hazards emerged.

105. The risk that internal pressure could build within the Affected Products during ordinary and foreseeable use and cause the stopper to suddenly and forcefully eject upon opening was not open and obvious to ordinary consumers at the time of purchase. Consumers would not reasonably expect that storing hot or perishable contents in a sealed container could create sufficient internal pressure to cause the stopper to eject with force and cause injury.

106. Defendant knew or, in the exercise of reasonable care, should have known of this hazard through pre-market design and testing, as well as post-sale consumer complaints, product reviews, and incident reports. Defendant has acknowledged at least 27 incidents involving forceful stopper ejection, including injuries requiring medical attention and instances of permanent vision loss, yet failed to timely provide adequate warnings, instructions, or interim safety guidance prior to issuing a recall.

107. Defendant breached its duties by (a) omitting clear pre-sale warnings regarding the risk of pressure buildup and sudden stopper ejection; (b) failing to provide adequate instructions on how to safely open the container or mitigate internal pressure prior to removing the stopper; and (c) failing, post-sale, to promptly warn consumers or provide interim safety measures, such as revised instructions, warnings, or replacement components, once the hazard became known.

108. The absence of adequate warnings and instructions was a substantial factor in causing injuries to Plaintiffs and Class Members during ordinary and intended use.

**COUNT VI**
**NEGLIGENCE**
**(On behalf of the Plaintiffs and the Nationwide Class)**

109. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

110. Defendant owed Plaintiffs and the Class a duty to exercise reasonable care in the design, testing, manufacture, instructions, and warnings for the Affected Products, including a post-sale duty to take reasonable steps once hazards became known.

111. Defendant breached these duties by, among other things, (a) designing and selling the Affected Products with a stopper that lacks an adequate pressure relief mechanism, thereby permitting dangerous internal pressure buildup; (b) failing to conduct or act upon reasonable pre-market testing regarding pressure accumulation and stopper ejection risks; (c) failing to provide adequate pre-sale warnings and instructions regarding the risk of pressure buildup and safe opening of the container; and (d) failing, post-sale, to timely warn prior purchasers, issue corrective instructions, or implement a prompt repair or replacement program after receiving consumer complaints, incident reports, and injury data.

112. The risks of internal pressure buildup and sudden, forceful stopper ejection were foreseeable to Defendant, and safer, feasible alternative designs and precautions were available at reasonable cost, including incorporation of an effective pressure relief mechanism, controlled venting systems, stopper designs that prevent ejection under pressure, and clear, prominent warnings and instructions regarding safe use.

113. Defendant's negligence was a substantial factor in causing the stopper ejection events and resulting injuries suffered by Plaintiffs and the Class during ordinary and intended use. Such harm was a reasonably foreseeable consequence of the breaches alleged.

114. As a direct and proximate result, Plaintiffs and the Class sustained damages, including overpayment, out-of-pocket losses, and diminution in value. Plaintiffs and Class Members primarily seek recovery for economic losses independent of any personal injury claims.

**COUNT VII**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**U.C.C. § 2-314**
**(On behalf of the Plaintiffs and the Nationwide Class)**

115. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

116. Defendant is a merchant that designed, manufactured, marketed, and sold the Affected Products for ordinary purposes of storing and consuming food and beverages.

117. An implied warranty arose that the Affected Products were fit for the ordinary purposes for which such goods are used, including the safe storage and consumption of hot and perishable contents during normal and foreseeable use.

118. The Affected Products were not merchantable at the time of sale because they were defectively designed with a stopper lacking an adequate pressure relief mechanism, which allows internal pressure to build when food or beverages are stored for extended periods. As a result, the stopper can suddenly and forcefully eject upon opening, exposing users to a significant risk of impact injuries, lacerations, and eye injuries during ordinary and foreseeable use.

119. Defendant knew or should have known of this hazard through pre-market testing and post-sale complaints and reviews, yet continued sales without an adequate design fix or effective warnings.

120. Plaintiffs and Class Members purchased the Affected Products from Defendant or its authorized retailers. To the extent privity is required, it is satisfied by purchases through Defendant's retail channels and/or because purchasers were intended third-party beneficiaries of

Defendant's warranties.

121. Any purported warranty disclaimer or limitation is unenforceable because it was not conspicuous, is unconscionable given the undisclosed safety defect, and in all events any limited remedy failed of its essential purpose.

122. Defendant had actual notice from consumer complaints and injury reports.

123. Defendant's breach was a proximate cause of injuries and damages, including economic damages, including overpayment, out-of-pocket costs, and diminution in value.

**COUNT VIII**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**N.J.S.A. § 56:8-1, et seq.**
**(On Behalf of Plaintiff George Euripides and the New Jersey Subclass)**

124. Plaintiff George Euripides incorporates by reference all preceding paragraphs as though fully set forth herein.

125. Plaintiff Euripides brings this claim individually and on behalf of the New Jersey Subclass.

126. Defendant is a "person" within the meaning of N.J.S.A. § 56:8-1(d).

127. The Affected Products are "merchandise" within the meaning of N.J.S.A. § 56:8-1(c) because they are consumer goods sold to the public for personal, family, and household use.

128. The New Jersey Consumer Fraud Act prohibits, among other things, the act, use, or employment of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of merchandise.

129. Defendant engaged in unlawful conduct under the NJCFA by marketing, advertising, labeling, distributing, and selling the Affected Products as safe, reliable, durable, and

suitable for storing hot and perishable foods and beverages, while failing to disclose that the Affected Products could build internal pressure during ordinary and foreseeable use and cause the stopper to suddenly and forcefully eject upon opening.

130. Defendant's omissions and representations were material because reasonable consumers, including Plaintiff Euripides and members of the New Jersey Subclass, would consider it important that the Affected Products lacked an adequate or effective pressure-relief mechanism and posed a risk of sudden stopper ejection, impact injury, laceration, and eye injury during ordinary use.

131. Defendant also engaged in unlawful conduct by promoting the Affected Products' heat-retention, portability, stopper, and everyday-use features while omitting that those same conditions could create dangerous pressure buildup inside the container. Defendant's marketing conveyed that the products were safe and suitable for their intended use, while concealing the material safety defect later acknowledged through the recall.

132. Defendant knew or should have known that the Affected Products were defective, unsafe, and not suitable for their ordinary and intended purpose because the products were designed and sold with stoppers that lacked an adequate pressure-relief mechanism and because Defendant received or had access to consumer complaints, incident reports, product-return information, and other safety information concerning pressure buildup and forceful stopper ejection.

133. Defendant's conduct was consumer-oriented and occurred in connection with the sale and advertisement of merchandise to the public, including Plaintiff Euripides and members of the New Jersey Subclass.

134. Plaintiff Euripides and members of the New Jersey Subclass suffered an

ascertainable loss as a result of Defendant's unlawful conduct. They purchased Affected Products that were worth less than represented, unsafe for their ordinary and intended use, and subject to recall due to an undisclosed pressure-related stopper-ejection defect.

135. Had Defendant disclosed the true nature of the defect and associated safety risk, Plaintiff Euripides and members of the New Jersey Subclass would not have purchased the Affected Products, or would have paid materially less for them.

136. The recall does not eliminate Plaintiff Euripides's and the New Jersey Subclass's ascertainable loss because it does not provide a refund, does not compensate consumers for the diminished value or overpayment at the time of purchase, does not compensate for loss of use, does not provide statutory damages, and does not provide full relief for consumers who purchased products that were unsafe and materially different from what Defendant represented.

137. Defendant's unlawful conduct caused Plaintiff Euripides's and the New Jersey Subclass's ascertainable losses because Defendant's misleading representations and omissions induced consumers to purchase the Affected Products and to pay more than the products were worth.

138. As a direct and proximate result of Defendant's violations of the NJCFA, Plaintiff Euripides and members of the New Jersey Subclass are entitled to all available relief, including actual damages, treble damages, attorneys' fees, filing fees, costs of suit, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

**COUNT IX**
**BREACH OF EXPRESS WARRANTY**
**(On behalf of Plaintiffs and the Nationwide Class)**

139. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

140. Defendant marketed and sold the Affected Products into the stream of commerce intending that Plaintiffs and Class Members would purchase them.

141. Through the Affected Products' packaging, labeling, owner's manuals, use and care instructions, its website at Thermos.com, and its advertising on Amazon, Target, and Walmart, Defendant expressly represented and warranted that the Affected Products were safe, durable, and fit for storing and consuming hot and perishable food and beverages. Defendant further warranted in writing that the Affected Products were equipped with a "Dura-Guard pressure relief stopper that enhances insulated performance and removes easily," that they employ "double-wall vacuum insulation," and that they "keep hot food hot for up to 14 hours and cold food cold for up to 24 hours."

142. These affirmations of fact and descriptions of the goods were made in writing, were not mere puffery, and became part of the basis of the bargain when Plaintiffs and Class Members purchased the Affected Products.

143. Plaintiffs and Class Members read and relied on these representations in deciding to purchase the Affected Products.

144. The Affected Products did not conform to Defendant's express warranties. The stopper lacks an adequate pressure relief mechanism. Internal pressure builds during ordinary and foreseeable use, and the stopper can forcefully eject upon opening, exposing users to impact injuries, lacerations, and eye injuries. The nonconformity is material because the Affected Products present an unreasonable risk of serious physical harm, rendering them worthless or worth substantially less than a conforming product.

145. To the extent privity is required, it is satisfied. Defendant made these express warranties directly to consumers on the Affected Products' packaging, labeling, and website,

Plaintiffs and Class Members purchased through Defendant's authorized retail channels, and Plaintiffs and Class Members were the intended third-party beneficiaries of Defendant's warranties.

146. Defendant received notice of its breach through consumer complaints, warranty claims, product returns, and incident reports submitted to SaferProducts.gov, and through its own recall announcement on April 30, 2026, which acknowledged the Defect. To the extent any additional notice is required, Defendant's actual knowledge of the Defect excuses such notice, and this Complaint serves as notice.

147. Any purported disclaimer or limitation of Defendant's express warranties is unenforceable because it was not conspicuous, because it is unconscionable given Defendant's knowledge of the undisclosed safety defect, and because any limited remedy failed of its essential purpose. The replacement lid offered under the recall does not eliminate the pressurization hazard and does not compensate Plaintiffs or Class Members for the price premium paid or the diminished value of the Affected Products at the time of purchase.

148. Had Defendant disclosed the Defect, Plaintiffs and Class Members would not have purchased the Affected Products or would have paid materially less for them.

149. As a direct and proximate result of Defendant's breach, Plaintiffs and Class Members suffered damages, including overpayment, out-of-pocket losses, and diminution in value, and are entitled to actual damages, incidental and consequential damages, attorneys' fees, costs, and all other relief the Court deems just.

**COUNT X**
**NEGLIGENT MISREPRESENTATION**
**(On behalf of Plaintiffs and the Class)**

150. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

151. Defendant, in the course of its business and in a transaction in which it had a pecuniary interest, supplied false information for the guidance of Plaintiffs and Class Members in their purchasing decisions.

152. Defendant represented that the Affected Products were safe for their intended use, durable, suitable for storing hot and perishable contents for extended periods, and equipped with a functioning pressure relief stopper. Those representations were false. The stopper lacks an adequate pressure relief mechanism, and the Affected Products can forcefully eject the stopper during ordinary and foreseeable use.

153. Defendant owed Plaintiffs and Class Members a duty to exercise reasonable care in communicating information about the safety and characteristics of the Affected Products. As the designer, manufacturer, and seller, Defendant possessed superior and exclusive knowledge of the Affected Products' design specifications, pre-market testing data, post-sale incident reports, and warranty claims, none of which was available to consumers.

154. Defendant failed to exercise reasonable care in obtaining and communicating this information. Defendant had no reasonable ground to believe its safety representations were true given the consumer complaints, incident reports, and injury data available to it, including the report submitted to SaferProducts.gov on or about April 12, 2024, and the at least 27 incidents Defendant has acknowledged.

155. Defendant intended that Plaintiffs and Class Members rely on its representations in

deciding whether to purchase the Affected Products.

156. Plaintiffs and Class Members did not know the representations were false, reasonably believed them to be true, and justifiably relied on them in purchasing the Affected Products.

157. As a direct and proximate result, Plaintiffs and Class Members suffered damages, including the price premium paid and the diminished value of the Affected Products. They would not have purchased the Affected Products, or would have paid less, had Defendant disclosed the Defect.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class and Subclasses, pray for relief and judgment against Defendant as follows:

a. Certifying the Class and Subclasses pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as the representative of the Class, and designating Plaintiffs' counsel as Class Counsel;

b. Awarding Plaintiffs, the Class, and Subclasses compensatory damages;

c. An order requiring Defendant to implement a court-supervised repair and corrective-notice program for all Affected Products;

d. Corrective advertising and disclosure statements at points of sale and on Defendant's website;

e. Disgorgement and restitution of monies received from Class Members as a result of the defective and misrepresented products;

f. Awarding Plaintiffs, the Class, and Subclasses appropriate relief, including but not limited to actual damages;

g. For declaratory and equitable relief, including restitution and disgorgement;

h. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

i. Awarding Plaintiffs, the Class, and Subclasses the costs of prosecuting this action, including expert witness fees;

j. Awarding Plaintiffs, the Class, and Subclasses reasonable attorneys' fees and costs as allowable by law;

k. Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to cure inadequate recall and notification processes, correct its manufacturing and marketing practices, and to comply with the relevant consumer protection statutes;

l. Awarding pre-judgment and post-judgment interest;

m. For punitive damages;

n. Treble damages as applicable; and

o. Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: September 3, 2026

**LEVI & KORSINSKY, LLP**

By: /s/ Tyler A. Litke
Tyler A. Litke (6330041)
Mark S. Reich (*Pro Hac Vice Forthcoming)*
Michael N. Pollack (*Pro Hac Vice Forthcoming)*
500 5th Ave, 42nd Floor
New York, NY 10010
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: tlitke@zlk.com
Email: mreich@zlk.com
Email: mpollack@zlk.com

Jeffrey S. Goldenberg (0063771)
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: 513-345-8291
Facsimile: 513-345-8294
Email: jgoldenberg@gs-legal.com

Mason A. Barney *Admitted Pro Hac Vice*
Leslie Pescia *Admitted Pro Hac Vice*
SIRI & GLIMSTAD LLP
745 Fifth Ave., Suite 500
New York, NY 10151
Telephone: 212-532-1091
mbarney@sirillp.com
lpescia@sirillp.com

*Interim Co-Lead Class Counsel for Plaintiffs and the proposed Class and Subclasses*